Filed 6/20/16  Perry v. Hoag Memorial Hospital Presbyterian CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JENNIFER PERRY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>HOAG MEMORIAL HOSPITAL PRESBYTERIAN,<br><br>    Defendant and Respondent. | G049663<br><br>(Super. Ct. No. 30-2012-00561400)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed.

Law Offices of Sandra L. Noel and Sandra L. Noel; Jeremy J. Waitman for Plaintiff and Appellant.

Godes & Preis, James N. Godes and Oliver B. Dreger for Defendant and Respondent.

\*        \*        \*

Jennifer Perry appeals the trial court's order granting summary judgment to Hoag Memorial Hospital Presbyterian (Hoag) on her claims for unlawful termination of her employment as a nurse. The trial court earlier granted Hoag's motion to deem admitted certain discovery requests for admissions, and those admissions dictated the summary judgment ruling. As we explain, the trial court did not err, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The gravamen of Perry's second amended complaint was that Hoag fired her because she suffered from a chronic back injury caused by fibromyalgia, in violation of the Fair Employment and Housing Act (FEHA) (Govt. Code, § 12940 et seq.) and related employment statutes and public policy.[1] As noted, Perry's admissions largely compelled the trial court's summary judgment ruling. The court at the summary judgment hearing summarized the central discovery issue in the case and the relation between the deemed admissions and the summary judgment ruling, as follows:

"Let me go over the history of this problem with discovery, because it is a critical point in this motion. And I went through this history starting with the original request for admission, which was sent by personal service on March 22 [, 2013]. And we know that there was a problem and a dispute about an extension of time to respond thereto. Ms. Noel asked for a week's extension. And a week was granted, but it was

---

[1] Specifically, of the causes of action that survived demurrer, Perry's second amended complaint alleged Hoag: discriminated against her by terminating her employment because of a physical disability, in violation of FEHA (Second Cause of Action) and state public policy (Sixth Cause of Action); failed to engage in the interactive process to accommodate her disability without discrimination , in violation of FEHA (Third Cause of Action) and public policy (Seventh Cause of Action); retaliated against her for protesting its failure to accommodate her, in violation of FEHA (Fourth Cause of Action) and public policy (Eighth Cause of Action); breached an implied contract to terminate her only for cause (Ninth Cause of Action); and violated wage and hours laws (Tenth Cause of Action).

conditional upon paying some sanctions. And then when no sanctions were paid, the defendant's point of view was if the week's extension didn't exist, and therefore the time limit had been missed.

"But there's an interesting aspect to request for admission here. They're unique in the discovery arsenal because there is such opportunity to overcome the responding party's failings. The fact that the time limit for responses wasn't met, does not mean that the responding party could not still have responded.

"We learned that Ms. Noel was released from a medical restriction on April 27 and yet there was still no response to [Hoag's] request [for admissions], except for the unverified responses which don't meet the statutory requirement. That occurred. But even yet in April there was still no motion to compel responses. That didn't happen until the 10th of May. Even by that time a verified set of responses would have resolved the problem from the plaintiff's point of view.

"There might have been an imposition of monetary sanctions if a motion had come on for hearing. But the opportunity to respond still existed. Even if there was a dispute about the one-week extension. Even if there was a problem with the attorney's health. By the time [Hoag's] motion [to deem the requests admitted] was filed [on May 10th], [there] was still an opportunity to respond to the request [for admissions]. In fact, that motion didn't come on for hearing until June 10th. Even to that date there was an opportunity under the statute, an unfettered opportunity under the statute to submit responses to the request for admission. And that wasn't done. So the court was required, I believe, to grant that motion.

"And then [the] relief [motion was not filed until] the 30th of July, I believe. That was from a motion for relief from the order deeming the request[s] admitted. . . . . And that came on for hearing on the 9th of September. And the court at that time commented about all of these lapses of time that it has just described. And even then it at least was possible that the court could have granted relief from the order of

3

June 10 [deeming the requests for admissions admitted]. But the motion came on for hearing on September 9. And the court thought that the cumulative [e]ffect of the delays and the then three-month delay after the order deeming the request admitted just meant that the court could not grant relief.

"So request[s] for admission have a lot of opportunity to overcome problems. Because — in fact, they don't have to be responded to within 30 days. They don't have to be responded to when the motion [to deem admitted] is filed. They don't have to be responded to until the minute the motion is heard. [The r]equest can be responded to even then.

"And that's why we're in trouble here. That's why the plaintiff has a situation where the court is going to grant this motion for summary judgment. Because the request[s] for admission after all of that time were deemed admitted and they then basically crippled the plaintiff's case. And despite Ms. Noel's heroic effort here this morning to argue to the contrary and in her papers to suggest a different result, the result that is compelled by the facts is the granting of this motion."

II

DISCUSSION

A.    *No Judicial Unfairness or Bias in Sustaining Hoag's Demurrer to the First Amended Complaint*

Perry recognizes that because the trial court allowed her leave to amend her first amended complaint (FAC), the trial court's order sustaining Hoag's demurrer to *that* complaint is not a basis to appeal the trial court's later order granting Hoag summary judgment on her second amended complaint. But she raises the earlier sustained demurrer because she asserts it demonstrates the trial court's "animosity and unfairness against Plaintiff and her counsel." Not so. If anything, counsel's unfounded allegations against opposing counsel at the demurrer hearing and her refusal to take responsibility for

4

her faulty opposition demonstrates she and her client sought a proceeding biased in their favor — in other words, a proceeding in which the rules did not apply to them.

Perry filed in opposition to Hoag's demurrer to the FAC a memorandum of points and authorities that was 22 pages long, or almost 150 percent of the 15 page maximum. (Cal. Rules of Court, rule 3.1113(d).) It is axiomatic that the court in its discretion may reject a nonconforming, excessive brief. (*Kapitanski v. Von's Grocery Co.* (1983) 146 Cal.App.3d 29, 32-33.) Counsel made no apology for the length, but instead in a declaration she submitted with the opposition falsely accused Hoag of "far exceed[ing]" the page limit in its demurrer memorandum. Counsel, however, failed to grasp that Hoag's memorandum was within the page limitation, and the *memorandum*'s allegedly excessive pages actually consisted of Hoag's notice of motion and demurrer, properly filed.

In the declaration, Perry's counsel also excused her opposition memo's length because she completed it "on the [date] it was due to be filed," so "there was no time in which to apply for an ex parte application." The trial court observed that this "explanation" amounted to an admission "that there was inadequate time to do it right," which counsel highlights as an asserted demonstration of the trial court's bias and hostility. But it is a fair inference counsel did not afford adequate time to timely complete the memorandum within the required page length, particularly where Hoag's memorandum did *not* exceed the page limit. Counsel's appellate argument bolsters this conclusion when she admits "it was not until Plaintiff was in the process of completing the opposition that she [realized?] [she] was unable to shorten the opposition without compromising her arguments."

In any event, the trial court's comments must be read in context, where the court noted the truism attributed variously to Pascal, Twain, and other writers who have apologized that "'this letter is so long, but I did not have time to make it shorter.'" The court's remarks do not suggest bias or hostility, but instead an evenhanded application in

5

requiring Hoag and Perry alike to abide by the rules.  Additionally, Hoag opposed granting Perry a third shot at filing her complaint because "[w]hat they have done here with their first amended complaint is essentially bring the same claims" without correcting earlier alleged deficiencies.  But the trial court in sustaining Hoag's demurrer to the FAC nevertheless granted Perry's request for leave to file a second amended complaint.  We discern no evidence of bias, hostility, or unfairness in the trial court's comments or its ruling.

B.　　　　　*The Trial Court Properly Sustained the Demurrer to Perry's "Medical Condition"　Allegations*

Perry asserts the trial court erred by sustaining Hoag's demurrer to the first and fifth cause of action in her second amended complaint alleging discrimination based on a "medical condition" as defined in Government Code section 12926, subdivision (i). The statutory definition includes a "health impairment related to . . . cancer" (*id.*, subd. (i)(1)), which Perry does not claim applied to her alleged fibromyalgia back disability.  The statute also prohibits discrimination based on a "medical condition" defined as a "genetic" or "[i]nherited characteristic" that is "presently *not* associated with any symptoms of any disease or disorder" (*id.*, subd. (i)(2), italics added).[2]

---

[2]　　In full, Government Code section 12926, subdivision (i) provides: "'Medical condition' means either of the following:  [¶]  (1) Any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer.  [¶] (2)  Genetic characteristics.  For purposes of this section, 'genetic characteristics' means either of the following:  [¶]  (A) Any scientifically or medically identifiable gene or chromosome, or combination or alteration thereof, that is known to be a cause of a disease or disorder in a person or his or her offspring, or that is determined to be associated with a statistically increased risk of development of a disease or disorder, ***and*** *that is presently not associated with any symptoms of any disease or disorder*.  [¶] (B)  Inherited characteristics that may derive from the individual or family member, that are known to be a cause of a disease or disorder in a person or his or her offspring, or that are determined to be associated with a statistically increased risk of development of a disease or disorder, ***and*** *that are presently not associated with any symptoms of any disease or disorder*."  (Italics and bold added.)

6

Our review of a sustained demurrer is de novo. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458.) We assess whether the complaint alleged facts sufficient to state a cause of action based on all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Ibid.*) "'Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]'" (*Ibid.*)

The trial court did not err. Perry insists it is enough that she alleged genetics and family history may play a substantial factor in fibromyalgia, and that she is allegedly currently disabled by her fibromyalgia symptoms . We interpret statutes de novo. (*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1399.) A "medical condition" based on "[g]enetic characteristics" or "[i]nherited characteristics" falls within the statute's ambit when it is "presently *not* associated with any symptoms of any disease or disorder." (Govt. Code, § 12926, subd. (i)(2)(A) & (B), italics added.)

The Legislature's plain intent in this portion of the Fair Employment and Housing Act's antidiscrimination safeguards is to protect employees who are *not* presently disabled by genetic or inherited disorders, but who nevertheless are subjected to adverse employment actions based on those conditions. For example, firing an able-bodied employee upon learning he or she has a genetic condition that may result in increased health care costs in the future falls within this provision.

That is not to say employers lawfully may discriminate against employees currently suffering symptoms based on genetic or inherited characteristics. To the contrary, those instances fall under other provisions of law, as reflected in Perry's numerous other causes of action. But "medical condition" in Government Code section 12926, subdivision (i), is not simply any and all health conditions, as Perry implicitly asserts. Rather, it is a term of art with a specific definition that she simply

7

ignored. Accordingly, the trial court did not err in sustaining Hoag's demurrer to her first cause of action based on that statutory provision. And because her fifth cause of action alleged a public policy violation wholly derivative of her first cause of action, the trial court properly sustained the demurrer to both. (*Jennings. v. Marralle* (1994) 8 Cal.4th 121, 135-136 [derivative claim fails where underlying FEHA claim fails].)

C.      *The Trial Court Did Not Err in Denying Perry's Motion to Compel Discovery*

Perry contends the trial court erred by denying her motion to compel discovery responses to her initial request for production of documents, which she served in May 2012, while Hoag's demurrer to her initial complaint was pending. Perry acknowledged she received the responses by June 19, 2012, which she maintained was after the deadline, thereby forfeiting Hoag's discovery objections, but she did not file her motion to compel responses until sometime in February 2013. The trial court denied her motion as untimely. We review the court's ruling for abuse of discretion (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733), and find none.

Perry's counsel did not appear at the hearing on the motion. The trial court explained its ruling at the hearing, observing, "I wish Ms. Noel had called in or appeared this morning. I went through some effort to collect the statutes that applied to some issues in this case and thought I would at least try [to] explain the court's ruling. I'll do so anyway. [¶] . . . [¶] [I]t is suggested that the fact that perhaps your original response to the discovery was tardy means that because the law says your objections are waived, Ms. Noel concludes that your responses evaporate in some fashion, and that's simply not true. She has made a motion that is based upon the inadequacy of your response and even a late response is one that triggers the 45-day time period, and I think that is set forth in [Code of Civil Procedure, section] 2031.310(a). [¶] And as you further read [Code of Civil Procedure, section] 2031.310(c), that sets forth the 45-day time limit for making this motion. And the exception there is if there is a specific agreement with a

8

later date designated.  [¶]  Even Ms. Noel does not contend there is any date designated for her deadline for making this motion.  And it is further the court's conclusion that there is no such agreement.  [¶]  So there are a variety of reasons why her motion is doomed to failure."

Perry insists that after an untimely discovery response, the propounding party "may bring a motion to compel *at any time* without prejudice."  (Italics added.) The authority she cites for this unlimited time frame in no way supports her assertion.  (See *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 405-408.)  *Sinaiko* holds that a belated response to discovery does not prevent a court from granting a motion to compel (*ibid.*), but it does not remotely suggest the motion may be filed at any time, without limitation.  To the contrary, case law recognizes the time limits to file a motion to compel apply despite a late response, albeit from the date of the response instead of the original due date, even though the parties must also meet and confer within that time frame to attempt to resolve their discovery issues.  (*Vidal Sassoon, Inc. v. Superior Court* (1983) 147 Cal.App.3d 681, 683-684 (*Vidal Sassoon*).)

As the trial court observed, the 45-day period in which to file a motion to compel runs from "receipt of [the] response," without regard to its timeliness.  (Code Civ. Proc., § 2031.310, subd. (a).)  There is no suggestion an untimely response affords the propounding party an unlimited time frame to file a motion to compel.  To the contrary, subdivision (c) provides:  "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the demanding party and the responding party have agreed in writing, the demanding party waives any right to compel a further response to the demand."  (*Id.*, subd. (c).)

Perry suggests the parties reached such an agreement, or argues alternatively that based on their correspondence defendant is estopped from raising the

9

untimeliness of her motion to compel.  As we explain, the record does not support the conclusion there was any such agreement.  Moreover, estoppel does not lie because *the court* lacks authority to grant a motion to compel filed outside the prescribed time limit. (*Vidal Sassoon*, *supra*, 147 Cal.App.3d at p. 683 ["This statute is mandatory and the court may not entertain a belated motion to compel"].)  In any event, any "later date" to which the parties agree must be a "specific" date to which they have agreed in writing.  (Code Civ. Proc., § 2031.310, subd. (c).)  There was no such agreement here.

Perry purports to find an agreement in the parties' correspondence in June 2012, just after Perry received Hoag's discovery response.  Perry asserted Hoag's objections to all 50 document requests were invalid, but sought to meet and confer before resorting to a motion to compel responses without objections.  The trial court recently had sustained Hoag's demurrer to the original complaint, with leave to amend.  Hoag on June 27, 2012 responded to Perry's suggestion they meet and confer as follows:  "Hoag will gladly meet its discovery responsibilities in this matter, but any meaningful meet and confer effort regarding your discovery requests cannot occur until Hoag is aware of what the subject matter of this case is [given] there is no operative complaint on file in this case, due to the demurrer sustained by the Court as to all nine causes of action.  Because of this, Hoag cannot determine whether the discovery you propounded is 'relevant to the subject matter involved,' as required by Code of Civil Procedure section 2017.010.  See *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 CA 4th 110 (discovery could not be compelled where there is 'no viable claim on file' because a demurrer had been sustained and no amended complaint had been filed)."

Perry claims that based on this letter, Hoag agreed that her meet and confer request — and her initial May 2012 discovery demand and any right to file a motion to compel further responses to that demand — somehow lay dormant if and until she passed the demurrer stage.  Accordingly, when the second amended complaint became operative, Perry in January *2013* sent Hoag a letter demanding to meet and confer on her initial

10

discovery demand and Hoag's responses, or she would file a motion to compel and seek monetary sanctions against Hoag and its counsel. Back in August 2012, Perry had sent a letter to Hoag suggesting that based on its June 27, 2012 letter, partially excerpted above, the "meet and confer process" lingered "in abeyance." Counsel apparently believed (but did not state) her meet and confer request tolled any time limit to file a motion to compel Hoag to further respond or amplify its June 2012 responses.

But Perry omits from her briefing that Hoag answered Perry's August 2012 letter with an e-mail denying any "abeyance" ("I'm not sure what you mean about placing the 'meet and confer process in abeyance'"). The e-mail pointed out, as Perry also omits in her briefing, that Hoag's June 27, 2012 letter had advised her of Hoag's position: "Perhaps you should wait and see which claims, if any, survive demurrer, and *then you can propound new discovery* tailored to whatever subject matter of this action survives," and "Rest assured that *when new discovery is propounded* at the appropriate time, Hoag will fully and timely comply with its discovery obligations . . . ." (Italics added.) Based on this record, the trial court reasonably could conclude there was no agreement between the parties that set the necessary "specific later date" by which the demanding party would file its motion to compel. (Code Civ. Proc., § 2031.310, subd. (c).) Consequently, the trial court did not err in denying the motion as untimely.[3]

D.      *The Trial Court Did Not Err in Failing to Relieve Perry of Deemed Admissions*

Perry argues the trial court erred in denying her motion for relief from an order deeming admitted 29 of Hoag's requests for admissions. Perry does not dispute the trial court's ruling deeming the requests admitted based on her failure to file verified responses to Hoag's requests for admissions. Hoag had served the requests on March 22,

---

[3]      Perry asked for $6,000 in sanctions against Hoag and counsel in her motion to compel further discovery responses. In denying the motion, the trial court found it was frivolous and sanctioned Perry $3,375. Perry's failure to timely pay the sanction is relevant to the issue of deemed admissions, discussed below.

11

2013, and they were due on April 22, 2013. On April 18, 2013, Perry's attorney contacted Hoag's counsel and requested an extension because she had just completed a five-week trial on April 16, 2013, during which she fell ill and had not recovered.

Hoag complained Perry's attorney never bothered to respond to *its* request for an extension for an earlier deadline, but offered to extend Perry's deadline a week, to April 29, 2013, provided Perry paid the sanctions amount due. Perry asserted the sum had been paid, but Hoag later provided proof the check had bounced. Perry failed to respond to the requests for admissions by the original April 22 deadline and, according to Hoag, also failed to meet the proffered April 29 due date. Consequently, Hoag moved for an order deeming its requests for admissions (RFAs) admitted. In response, Perry faxed to Hoag unverified responses on May 10, 2013.[4]

At a hearing on June 10, 2013, the trial court granted Hoag's motion to deem the RFAs admitted. The court explained: "We have now heard confirmation from plaintiff's counsel that there has been no verification, and that means that essentially the response that was received earlier [on May 10th] is a nullity. There were denials, there were various objections; but in substantial measure, there were denials and those have to

---

[4]  Perry's attorney claimed her office had mailed the responses to Hoag by the April 29 deadline, but acknowledged they were not verified at that time or when she sent them by fax to Hoag on May 10th. A date in the May 10th responses suggested they had been prepared on April 29th, but Hoag alleged Perry's counsel had missed that deadline and someone in her office fraudulently inserted "April 29" into the May 10th responses to make it look like they had been prepared earlier. Perry's legal assistant denied Hoag's allegation, explaining he had timely prepared and mailed the discovery responses on April 29th, including Perry's RFA denials, "based on the [draft] responses and information provided by Ms. Perry to us ahead of time." (Original brackets.) He offered no explanation why Hoag never received the responses he mailed, but corroborated counsel's explanation that because she had been "unable to sit down with Ms. Perry to review her [draft] responses, we were not going to have her [i.e., Perry] sign verifications under penalty of perjury . . . ." (Second brackets added.) Because Perry's responses remained unverified by the time of the hearing on Hoag's motion to deem the RFAs admitted, the trial court implicitly concluded it was unnecessary to resolve Hoag's fraud allegation.

12

be verified. And in the absence of verifications, we have really no response to the request for admission. The statute mandates that we grant that motion and deem those requests admitted, and that will be the order at this time in regard to that motion."

Perry does not challenge that ruling, but rather the trial court's subsequent denial of her motion to be relieved from the admissions. As is often the case in discovery matters, however, it is not the initial fault that earns an adverse ruling, but rather the failure to acknowledge it and make the showing necessary to obtain relief.

Perry continued to litigate the case on her own schedule. On June 24, 2013, Perry mailed Hoag a set of purported "verifications," each of which referred to a "foregoing" document that was not attached, including her "Responses and Objections to Defendant's Request for Admissions." At the June 10th hearing, however, the trial court had not authorized Perry to produce belated verified responses to the RFAs; to the contrary, it had deemed the requests admitted.

Nearly two months after the June 10th hearing, Perry filed on July 30, 2013, a motion to be relieved from the admissions. As we discuss below, the court denied the motion. We review an order denying relief from a "deemed admitted" finding under the deferential abuse of discretion standard. (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 780 (*St. Mary*).) Such a motion "is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal. [Citations.] The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318-1319, internal citations and quotation marks omitted.)

In denying Perry's motion at a hearing on September 9, 2013, the trial court explained at length: "This is what the court believes the circumstances are. The requests were sent out many months ago, I don't have the exact date of that [March 22, 2013], but we know that the motion for an order compelling that they be deemed admitted is filed, I

13

believe that date is the 10th of May. [¶] Now, an important date is the plaintiff's counsel's return to work. I'm not starting the clock running or the need to act upon this discovery when it was originally served, that goes back a long time ago. I'm starting the clock running, though, on the 27th of April when counsel was back to work, when her [brief] work absence on medical leave ended."

The court noted in particular, "[R]emember the details about requests for admission. The court *cannot* grant requests that they be deemed admitted if there is a proper response right up until the date of the hearing. [Italics added.] The motion could be called for hearing and you would walk up to the counsel table and say, I have it, and that takes the motion off calendar. But none of that happened."

The court observed, "I'm starting the time running on [April] 27th. We have a hearing on the 10th of June. And [on] the 10th of June we still have no response, so the court must grant the motion. It is a significant amount of time for which I believe there is no justification. There is no basis or excuse for failure to do something in that time. [¶] Remember that in the reply paper, I believe it's page 3, line 4, it was served on [Perry] the week before the hearing, June 3rd, [Hoag] called out the fact that there [had been and apparently] would be no verification. That's the essence of simplicity. The urgency is so strong and the necessary effort is so light that that had to be done in that week. It wasn't done. We came to the hearing, I think you were not here, Mrs. Noel, you were in your office and that's fine, but we had no proper response, the court had to grant the motion. That's one substantial period of inattention."

The court concluded, "The next substantial period of inattention followed the granting of that motion on June 10. Today's motion was filed on July 30 and came on for hearing today. Now, that just seems unacceptable and does not show in the court's mind excusable neglect. It shows another variety of neglect and inattention. Combined with that we are now approaching a trial and the defendant has a right to plan for that trial

14

based upon the court's order of June 10, which is now three months ago. There is no justification for this."

The trial court did not err in denying the motion. As the trial court observed, the requisite showing for relief for a party in default on its discovery obligations changes dramatically once the court enters an order deeming RFAs admitted. As the court noted, in the period *before* the order is entered, the responding party may defeat a motion to establish admissions by serving responses to RFAs up until the moment the hearing is called. (*Tobin v. Oris* (1992) 3 Cal.App.4th 814, 827, disapproved on another ground in *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 983 (*Wilcox*).) "*No showing of 'mistake, inadvertence or excusable neglect is required*." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 8:1374.2, p. 8G-24 (Rutter), original italics.) Notably, however, "unsworn responses are equivalent to 'no response at all' and therefore not in 'substantial compliance'" with the party's discovery obligations. (*Id.*, ¶ 8:1374.1a, p. 8G-24.) The opportunity to file compliant responses before the hearing on the propounding party's motion to deem responses admitted "ensures that litigants receive formal notice of the need to prepare responses and some additional time to accomplish that task before the devastating effects of failing to respond to RFAs are visited upon them." (*Id.*, ¶ 8:1374.2, p. 8G-24.)

These dire effects are well-known to civil practitioners. "The law governing the consequences for failing to respond to requests for admission may be the most unforgiving in civil procedure. There is no relief under section 473." (*Demyer v. Costa Mesa Mobile Home Estates* (1995) 36 Cal.App.4th 393, 394, fn. omitted (*Demyer*), disapproved on other grounds in *Wilcox*, *supra*, 21 Cal.4th at p. 983, fn. 12.) "[W]oe betide the party who fails to serve responses before the hearing. In that instance the court has no discretion but to grant the admission motion, usually with fatal consequences for the defaulting party. One might call it 'two strikes and you're out' as applied to civil procedure." (*Demyer*, at pp. 395-396.)

15

Accordingly, one would expect an attorney to work diligently to file sworn responses to RFAs by the date of the deemed admissions hearing, which in this case took place on June 10, 2013. But counsel did not meet that deadline. She explained in a declaration that she had fallen sick with an unspecified illness during another trial that ended on April 16, 2013, and that her doctor had ordered her "off work" until April 27, 2013, which made it impossible for her to meet with Perry to review Perry's draft discovery responses and obtain Perry's verification of those responses by their initial due on April 22, 2013, or by the extended due date on April 29, 2013. But despite the dire warnings sounded in *Demyer*, Rutter, and similar authorities, the record is devoid of evidence that counsel did *anything* to obtain Perry's verification between the date counsel's doctor authorized her to return to work, April 27, 2013, and the date of the hearing on Hoag's motion to deem its RFAs admitted, on June 10, 2013. Nor did counsel offer *any* reason for not doing so. Thus, Perry does not challenge the trial court's order at the June 10, 2013, hearing deeming Hoag's RFAs admitted.

Instead, she argues only that the trial court abused its discretion in denying her motion to be relieved from the deemed admissions. After a "deemed admitted" order has been entered, the party in default may seek relief by filing a motion to withdraw or amend the deemed admission under section 2033.300. (*Wilcox*, *supra,* 21 Cal.4th at p. 979; all further undesignated statutory references are to this code.) Section 2033.300, subdivision (b), provides: "The court may permit withdrawal or amendment of an admission *only if* it determines that the admission was the result of mistake, inadvertence, or *excusable* neglect, *and* that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits." (Italics added.) "[T]he word '"excusable"' means just that: inexcusable neglect prevents relief."'" (*Torbitt v. State of California* (1984) 161 Cal.App.3d 860, 866 (*Torbitt*).) Accordingly, Perry bore the burden in seeking relief from the deemed admissions to establish her discovery failures were excusable. (*New Albertsons, Inc. v. Superior Court*

16

(2008) 168 Cal.App.4th 1403, 1420.) The trial court reasonably could conclude she failed to meet her burden.

Like her opposition to Hoag's motion to have its RFAs deemed admitted, Perry's motion for relief from the deemed admissions again focused only on her difficulty in mailing her *unsworn* responses by the extended April 29, 2013, deadline, which Hoag asserted it never received. Upon receiving Hoag's motion on May 10, 2013, to deem its RFAs admitted, Perry on that date faxed her responses — which remained unsworn — to Hoag.

Significantly, while Perry's attorney emphasized the trial and brief illness that prevented her in late April 2013 from obtaining Perry's verification, both ended by April 27, 2013. Neither Perry nor counsel offered *any* reason or excuse why the responses remained unsworn by the May 10 date that she faxed them to Hoag. Nor did either offer *any* reason or excuse why the responses remained unsworn by the date of the deemed admissions hearing on June 10, 2013. Instead, Perry merely stated in her motion for relief that she faxed the verification to Hoag on June 24, 2013, but again with *no* excuse for *that* additional period of delay, which now totaled *months* since Perry's counsel returned to work on April 27th. Perry exacerbated the delay further by failing to file her motion to withdraw the deemed admissions until July 30, 2013. By statute, simply faxing her untethered verification to Hoag on June 24th did not render the trial court's deemed admission order void. (§ 2033.300, subd. (a); Rutter, *supra*, ¶ 8:1386, p. 8G-28 ["An admission cannot be amended or withdrawn except by leave of court after noticed motion"].)

In any event, neither Perry nor counsel offered *any* reason for the additional extended period of delay in failing to file her motion for relief until July 30, 2013. Perry's unexplained and unexcused default in meeting her discovery obligations now extended more than three months beyond the only period for which she offered any excuse, i.e., up to April 27th. Her motion could not be heard until September 2013,

17

nearly six months after Hoag had propounded its requests for admissions and, significantly, Perry and counsel still offered *no* explanation of *any kind* for their serial instances of delay in meeting their discovery obligation to furnish sworn responses. In denying Perry's motion for relief, the trial court expressly noted the unexplained intervals of delay, but Perry filed no motion for reconsideration (§ 1008) to offer any excuse for her default following April 2013, nor does she offer any on appeal.[5]

On this record, we cannot say the trial court erred in concluding Perry failed to meet her burden to establish she was entitled to relief from her deemed admissions based on excusable neglect. Excusable neglect requires an excuse. (*Wilcox*, *supra*, 21 Cal.4th at p. 976; *Torbitt*, *supra*, 161 Cal.App.3d at p. 866.) Neither Perry nor counsel offered any excuse at any time for any of the relevant periods of delay in which she failed to meet her discovery obligations or obligation to seek relief and provide a reason for the serial periods of delay and default. The trial court could not be faulted in failing to find excusable neglect after April 2013 when Perry offered no excuse. On appeal, we must presume the ruling below is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) Perry has failed to carry her burden to demonstrate error in the trial record. (See *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58 [fundamental principles of appellate review include: "(1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error"].)

---

[5]     After the attorney who represented Perry below repeatedly obtained oral argument continuances in this court because she was engaged in other litigation, another attorney finally appeared and suggested that counsel at some unspecified time had been diagnosed with cancer. But the record is devoid of any mention of the diagnosis, or its nature or prognosis, nor does it appear to have prevented counsel from appearing in other matters. In any event, there is no dispute Hoag and the trial court knew nothing of the diagnosis at the time of the deemed admissions hearing or Perry's motion for relief from the admissions.

E.   *The Trial Court Did Not Err in Denying a Continuance of the Summary Judgment Hearing*

Perry contends the trial court abused its discretion by failing to continue the summary judgment hearing so she could depose two witnesses.  "[C]ontinuance of a summary judgment hearing is *not* mandatory where the [section] 437c [, subdivision] (h) affidavit [in support of the request] . . . fails to show the discovery ostensibly needed could reasonably lead to evidence necessary to resist the summary judgment motion.  Here, the continuance motion invokes the trial court's *normal broad discretion* and its decision is therefore reviewed under the ordinary abuse of discretion standard."  (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:103.3, p. 8-65, original italics, citing *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715-716.)  The party seeking a continuance must demonstrate: (1) facts establishing a likelihood that controverting evidence may exist and how the information sought is essential to opposing the motion; (2) the specific reasons why such evidence cannot be presented at the present time; (3) an estimate of the time necessary to obtain such evidence; and (4) the specific steps or procedures the opposing party intends to utilize to obtain such evidence.  (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532.)

The trial court denied Perry's two ex parte applications to continue the hearing, finding she had not met the standard specified in section 437c, subdivision (h), but it did so without prejudice.  The trial court did not err.

Perry failed to show why the proposed evidence she sought could not have been secured earlier by taking depositions in a diligent fashion.  In any event, she failed to establish a likelihood the depositions would produce meaningful evidence to oppose the summary judgment motion.  The first witness, Pamela Neale, was not under Hoag's control because she had left Hoag's employ two years before, and a cursory Internet

19

search of public information showed her present employer. The second witness, Jennifer Reiker, was on an extended emergency medical leave following a lengthy hospitalization.

Perry did not demonstrate Reiker had anything unique to add since her involvement stemmed only from meetings where others were present. And her undisputed extended medical leave did not suggest a brief continuance would be fruitful. As to Neale, Perry attempted to notice her as a party witness. But the person must be an officer, director, managing agent, or employee of the party at the time of the deposition. (§ 2025.280, subd. (a); *Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1398 [former employees must be subpoenaed, not noticed].) Perry showed no diligence in obtaining this deposition and improperly attempted to shift her discovery duties to Hoag a few weeks before trial. Hoag assisted Perry in attempting to obtain Neale's deposition, to no avail, but could not force a former employee to appear.

In any event, Perry failed to demonstrate the depositions reasonably could lead to evidence necessary to resist the summary judgment motion, as required. (*Lerma*, *supra*, 120 Cal.App.4th at pp. 715-716.) It is not enough to state the proposed witnesses knew of Perry's alleged disability, measures to accommodate it, and the basis for her termination, as Perry contends. Because of Perry's binding judicial admissions on each of these issues, there is nothing Reiker or Neale could have said in their depositions that would have provided admissible evidence to resist the summary judgment motion. (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746 [judicial admissions cannot be rebutted].) Therefore, Perry did not and could not meet the standard for a continuance. The trial court did not err in denying it.

F.     *The Trial Court Did Not Err in Granting Summary Judgment in Hoag's Favor*

Perry asserts the trial court erroneously granted Hoag's summary judgment motion. "We review orders granting summary judgment de novo." (*Vebr v. Culp* (2015) 241 Cal.App.4th 1044, 1050.) A motion for summary judgment is properly granted if the

20

moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." [Citations.]' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

On appeal, we scrutinize the record for triable issues of fact, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) An order deeming RFAs admitted is conclusive and may not be "contested through contradictory evidence." (*St. Mary*, *supra*, 223 Cal.App.4th at p. 775; §§ 2033.280, subd. (c), 2033.410, subd. (a).) Of the causes of action remaining in Perry's second amended complaint following Hoag's demurrer, none presented a triable issue of fact.

1.      No Triable Issue of Fact on Perry's Discrimination Claims

Perry's second and sixth causes of action asserted discriminatory termination based on a physical disability, in violation of FEHA and California public policy, under Government Code section 12940, subdivision (a). These claims require discrimination as an element. (*Guz*, *supra*, 24 Cal.4th at pp. 354-355 [claim fails without a showing of prohibited discrimination].) A party moving for summary judgment meets

21

its burden if an element of the claim cannot be established. (Code Civ. Proc., § 437c, subd. (o)(2); *Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417.)

Perry in her deemed admissions admitted Hoag had "a legitimate, nondiscriminatory reason for terminating her employment," and that Hoag "never discriminated against [her] because of [her] disability," conclusively establishing those facts. Perry argues on appeal that her admission Hoag had a legitimate reason to terminate her employment is insufficient because she asserts Hoag did not provide her a reason for her termination. She reasons that the admission was "not fatal to her claim [because] employers rarely ever state that they are terminating someone because of their protected status." The distinction is misplaced and distorts the facts. Perry's deemed admission admitted more than simply that *Hoag did not admit* discriminating against her. To the contrary, she admitted Hoag did not discriminate against her. Consequently, she could not maintain her discrimination claims, and the trial court properly granted summary judgment.

2. No Triable Issue of Fact on Perry's Interactive Process Claims

Perry based her third and seventh causes of action, under FEHA and California public policy, respectively, on a failure to engage in the interactive process to identify a reasonable accommodation. Failure to engage in the interactive process is an element of each of these claims. (Govt. Code, §§ 12926.1, subd. (e), 12940, subd. (n); see *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 266.)

Perry in her deemed admissions admitted Hoag "engaged in the interactive process with [her] regarding [her] alleged disabilities." As noted, Perry also admitted that Hoag "never discriminated against [her] because of [her] disability." (See *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 871 [judicial admissions are dispositive].)

On appeal, Perry claims Hoag did not engage in the interactive process "in good faith," and that Hoag failed to *continue* to meet its interactive process obligations when it rescinded her telecommuting accommodation. But Perry did not admit merely that Hoag engaged in the interactive process *to some degree* or *on some occasions*, nor merely that Hoag did not discriminate against her *in some instances* but may have in others. Her admissions were not qualified in that way or any manner; they were unqualified. The trial court therefore reasonably could conclude no juror would have been persuaded by Perry's fine distinctions, but instead her admissions were dispositive.

Moreover, Perry's interactive process claim fails for the simple reason that she failed to identify "a reasonable accommodation that was objectively available during the interactive process," and therefore, "suffered no remedial injury from" any alleged violation of that process. (*Scotch v. Art Institute of California-Orange County, Inc.* (2009) 173 Cal.App.4th 986, 1019.) Accordingly, the trial court properly granted Hoag judgment on these claims.

3. No Triable Issue of Fact on Perry's Retaliatory Termination Claims

Perry's fourth and eighth causes of action (FEHA and public policy, respectively) were based on a claim of a retaliatory termination due to her purported protests against Hoag's procedures. An essential element of each claim is that Hoag terminated Perry in unlawful retaliation for some protected activity. (*Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1229-1231.) Perry claimed her protests regarding Hoag's failure to engage in the interactive process motivated it to terminate her employment. However, Perry admitted key contrary facts: (1) the only adverse employment action taken against Perry was her termination; (2) Hoag had a legitimate, nondiscriminatory reason for terminating her employment; (3) Hoag engaged in the interactive process with Perry regarding her alleged disabilities; (4) Perry never protested

23

to Hoag that she was denied any reasonable accommodation; and (5) Hoag never retaliated against her because of any protests.

Perry contends Hoag "failed to refute the burden-shifting element of pretext or motivat[ion]" under the test set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. Under that test, the plaintiff ordinarily bears an initial burden to establish a prima facie case of discrimination. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159.) When a defendant moves for summary judgment, however, the defendant bears an initial burden to either negate an essential element of the plaintiff's prima facie case or establish a legitimate, nondiscriminatory reason for terminating the employee. (*Id.* at p. 160.) If the employer makes that showing, then to avoid summary judgment, the employee must offer substantial evidence the employer's stated nondiscriminatory reason for termination is false or pretextual, or evidence that the employer acted with a discriminatory animus, or a combination of the two types of evidence.

But Perry's admission that Hoag did not discriminate against her resolved this burden-shifting process in a single stroke. It satisfied Hoag's initial burden in moving for summary judgment to negate the element of discrimination in her claims, and alternately also established that whatever reason Hoag may have had for terminating her was nondiscriminatory. And it prevented Perry from making the requisite showing necessary to avoid summary judgment, namely, that its proffered nondiscriminatory reason was false or pretextual, or that Hoag actually harbored a discriminatory animus. Perry could not make either showing because she had admitted Hoag in terminating her did not discriminate against her on the basis of her alleged disability. In other words, Perry could not avoid summary judgment because her admissions established there was no protected activity, no adverse employment action based on discrimination or other prohibited reasons, and no causal link between a protected activity and her termination. Consequently, there was no triable issue of material fact on these causes of action, and the trial court properly dismissed them.

24

4.    No Triable Issue of Fact on Perry's Claim of Breach of Implied Contract.

Perry based her ninth cause of action on a breach of an implied-in-fact contract of employment. An implied contract is a contract with implied terms; for example, termination only for "good cause," in contrast with at-will employment, which may be terminated by either party at any time for no reason. (*Guz*, *supra*, 24 Cal.4th at pp. 335-336.) Perry's unqualified and binding admissions she was "an at-will employee of Hoag," and that Hoag had a legitimate, nondiscriminatory reason for terminating her employment, doom her ninth cause of action for breach of an implied employment contract. On appeal, she refers to "Exhibit 4" as allegedly controverting evidence of an unattributed, purported promise of an employment contract with a good cause termination term if she completed her probationary period. But her admission she was an at-will employee was dispositive on her implied contract claim.

5.    No Triable Issue of Fact on Perry's Wage and Hour Claim.

Perry asserted in her 10th cause of action a wage and hour claim based on Hoag "invariably" denying her meal and rest periods. No violation of wage and hour laws occurs when the employer compensates the employee for any missed periods. (Lab. Code, § 226.7.) Hoag's unrebutted records showed Perry regularly clocked in and out to indicate she took her daily meal breaks, and that Hoag compensated her for the denied or interrupted break periods she claimed during her employment. Perry offered no competent evidence to the contrary. It is also undisputed that Perry was specifically instructed by Hoag to give up her hospital cordless phone for her breaks. This admission is fatal to her theory she "invariably" missed her breaks simply because she possessed a hospital phone. Possession of a phone does not constitute a "denied" break in violation of any wage and hour law, as Perry contends. Employers must relieve an employee of her duty during a break, but it is not the employer's responsibility to police the break

25

periods to ensure employees engage in no work activity. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1034.)

Perry's vague claim she was "invariably" denied meal and rest breaks appears to be based on her choice to carry a phone during her breaks, contrary to her employer's instructions. In any event, she presented no admissible evidence in opposing summary judgment to support her tenth cause of action. She does not challenge on appeal the trial court ruling sustaining Hoag's objections to the evidence she identified to support the claim. (*Guz, supra,* 24 Cal.4th at p. 334 [properly excluded evidence cannot undermine propriety of summary judgment].) Accordingly, there is no basis to overturn the trial court's summary judgment ruling.

Perry contends Hoag "waived all undisputed material facts" because Hoag did not "serve objections or a response to [Perry's] separate statement of material facts in dispute," but the record does not support this claim. Hoag served objections in response to Perry's separate statement of facts and, as noted, the trial court sustained many of those objections on critical facts, including the tenth cause of action. The trial court in its summary judgment order expressly stated, "Hoag's objections to Plaintiff's evidence proffered in opposition are sustained, leaving no substantial, admissible evidence to raise a triable issue of material fact as to this claim."

III

DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.



ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

27